## HAMMOND *vs.* CANDLER.

1. All conveyances and contrivances for carrying a slave out of Georgia and bringing him back as a free man, to be added to the free negro population of the State, are void; and the *status* of the negro remains just what it was before the first step in the process was taken.
2. A slave cannot acquire freedom in this State by lapse of time.

Escheat of Free Negroes, and motion for New Trial, in Baldwin Superior Court.   Tried before Judge LAMAR, February Term, 1860.

This was a proceeding by John Hammond, Ordinary of Baldwin county, and *ex officio* escheator thereof, to condemn escheat certain negroes, as being the property of a free man negro, Joe.

Candler interposed a claim, as owner of these negroes, and denying that they were free.

There was a trial at February Term, 1857, and verdict for escheator.   Claimant moved in an arrest of judgment, on the ground that the jury who rendered the verdict were not sworn as required by Act of 1819.   The presiding Judge sustained the motion, and counsel for the escheator excepted, and the Supreme Court reversed the judgment of the Court below, and remanded the cause.   At the next succeeding Term of the Superior Court, (August, 1857,) but after the judgment of reversal by the Supreme Court aforesaid, counsel for claimant moved for a new trial, on the ground that the jury were not sworn as provided by law in escheat causes, and because the contract between Joe, the alleged free negro, and his master for his manumission was void, and that the Court erred in allowing the deed of manumission to be read in evidence to the jury.

The presiding judge refused the motion for a new trial, and counsel for claimant excepted, and the case again came up to the Supreme Court.   That Court again reversed the judgment of the Court below.

For a more full statement of these adjudications, and the reasons for them, see 23d *Ga. Rep., p.* 493, *Candler vs. Hammond.*

The case being thus remanded the second time, counsel for

Hammond *vs.* Candler.

claimant amended their motion for a new trial, adding, as additional grounds—

1st. That the verdict was contrary to law.

2d. That the verdict was contrary to evidence.

3d. That the deed or bill of sale executed by Thaddeus G. Holt to Thomas Butler, in the State of Georgia, conveying the negro Joe, was in violation of the laws and policy of the State, and in fraud thereof, as the said bill of sale was without consideration proceeding from Butler, but that the money paid belonged to Joe, and that said bill of sale was thus made for the purpose of procuring the emancipation of Joe, by enabling Butler to take him to New Jersey, and then have him manumitted agreeably to the laws of that State, and with the view to enable said negro when thus and then emancipated to return to Georgia, and to become domiciled again in this State.

This motion for a new trial, thus amended, came on to be heard before the Honorable HENRY G. LAMAR, at February Term, 1860, of Baldwin Superior Court, when, after argument, the presiding Judge granted the motion, and ordered a new trial. To which decision counsel for escheator excepts, and assigns the same as error.

W. McKINLEY, for plaintiff in error.

KENAN & KENAN, *contra.*

*By the Court*—STEPHENS J., delivering the opinion.

The sole point on which this case turns is the *status* of this negro, Joe. If he is a free man, these negroes who were bought with his money for him are subject to escheat under the statute against the holding of slaves by free persons of color. But if he is himself a slave, the statute does not apply. Whether (he being a slave) these slaves, who are his property, belong to *his* master, upon the idea that the master owns his slave and all that his slave owns ; or whether they yet belong to the persons from whom Joe bought them, upon the idea that his purchase of them is void from want of capacity in him as a slave to make a contract, are questions not before us in this case. Our business is to decide whether or not they are subject to escheat, as being the property of

Hammond *vs.* Candler.

a free person of color.   There is no difference nor dispute about the facts in the case.   The only question is one of law, as to the *status* of Joe under the facts.   We think he is a slave.   He was a slave in 1821, the property of Thaddeus G. Holt.   It is contended that he is free, first by virtue of a manumission of him in New Jersey by one Butler, who had previously bought him from Holt.   The evidence on this point leaves no doubt that the sale of him by Holt to Butler, and Butler's quick succeeding manumission of him in New Jersey, with Joe's immediate return thereafter to Georgia, were but the different steps in a plan for carrying Joe out of Georgia as a slave and bringing him back as a free man.   It was a piece of machinery intended to evade our statute against manumission, and we think it was void from the first step to the last in the series.   The mischief at which the statute was levelled, and which we think it has cut up root and branch, was the increase of a free-negro population *in the State*, by converting slaves into free negroes.   This was the object of the statute, and it declares that all conveyances or contrivances intended to evade its object shall be void.   It would have been a perfectly legal transaction, if they had carried him out of the State and set him free outside, with a *bona fide* intention that he should remain out forever afterwards; but their intention from the beginning, that he should come back and be *added to the free-negro population of Georgia*, puts the sting of impotency and nullity into the whole proceeding, from the beginning to the end of it.   The *status* of Joe is just what it was before the first step was taken in that scheme to have him added to the free-negro population of Georgia.

2. But it was contended that he was free by lapse of time, he having been registered as a free man, and enjoyed the privileges of a free man ever since 1811.   It is very clear that no *statute* of limitation is applicable to the case, and we are at a loss to know what common law principle can bar the owner from his right to a *slave*.   Such a bar, instead of being found in our law, would be at war with the very object of the statute against manumission.   Our law does not allow conveyances, nor contrivances, nor time, to convert a slave into a free man in Georgia, to swell the ranks of a population which the Legislature has carefully guarded from increase from any source whatever, save that of procreation.   Judgment affirmed.